**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HOSPITAL BUSINESS SERVICES, INC.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UR M. JADDOU, DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,[1]<br><br>　　　　　Defendant. | Civ. Action No. 19-0198 (EGS) |

<u>**MEMORANDUM OPINION**</u>

**I.　Introduction**

Plaintiff Hospital Business Services, Inc. ("HBSI"), a holding company of Prime Healthcare Services, a hospital chain with approximately 40,000 employees nationwide, sought to hire eight foreign-born nationals in the United States as "Application Analysts." *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 18-1 at 10.[2] Plaintiff challenges the denial of six of the eight petitions by Defendant United States Citizenship and Immigration Services ("USCIS" or the "Agency"). *See id. at* 12. USCIS based its denials on the determination that the proffered

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendant Ur M. Jaddou, for Former Director L. Francis Cissna.

[2] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

positions do not require a bachelor's degree or higher in a specific specialty, and therefore do not meet the "specialty occupation" bar for H1-B visas set out in 8 C.F.R. § 214.2(h)(4)(iii)(A). *See* Def.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n ("Def.'s XMSJ"), ECF No. 19-1 at 6. HBSI alleges that USCIS's denials of the petitions are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. *See* Pl.'s MSJ, ECF No. 18-1 at 12. Pending before the Court are HBSI's motion for summary judgment, ECF No. 18-1; and USCIS's cross motion, ECF No. 19-1. Upon consideration of the motions, responses, and the replies thereto, the applicable law and regulations, the entire record and the materials cited therein, the Court **GRANTS IN PART AND DENIES IN PART** HBSI's motion for summary judgment and **GRANTS IN PART AND DENIES IN PART** USCIS's cross motion for summary judgment.

## II.  Background

### A. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA") permits employers to temporarily employ foreign, nonimmigrant workers in specialty occupations through the H-1B visa program. *See* 8 U.S.C. § 1101(a)(15)(H). To obtain a visa, an employer first submits to the Department of Labor ("DOL") a Labor Condition Application ("LCA"), which identifies the specialty occupation at issue and certifies that the company will comply with the

requirements of the H-1B program. 8 U.S.C. § 1182(n)(1). Once the DOL has certified the LCA, the employer submits it to USCIS, along with a Petition for a Nonimmigrant Worker ("Form I-129" or "petition") on behalf of the alien worker, showing that the proffered position satisfies the statutory and regulatory requirements. 8 C.F.R. § 214.2(h)(4)(i)(B).

In line with the statutory definition in 8 U.S.C. § 1184(i)(1), the USCIS regulation defines a specialty occupation as one that "requires the attainment of a bachelor's degree or higher in a specific specialty" or its equivalent, in addition to "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts." 8 C.F.R. § 214.2(h)(4)(ii). USCIS's implementing regulations set forth four criteria, of which at least one must be satisfied, to determine whether a profession is a "specialty occupation." An occupation qualifies if:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into a particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organization or, in the alternative, an employer may show that its particular position

is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4). USCIS determines whether a position qualifies as a specialty occupation, *see* 20 C.F.R. § 655.715; and the petitioner bears the burden of proving that the proffered position falls within one of the four categories, *see* 8 U.S.C. § 1361.

To aid USCIS adjudicators in understanding job duties and classifications, USCIS accepts "relevant documentation from an authoritative career resource, which lists the duties, work, environment, education, training, skills, and other qualification requirements for the occupation." Administrative Record ("AR"), ECF No. 23-11 at 25. One such resource that USCIS "routinely consults" is the U.S. Department of Labor's ("DOL") Occupational Outlook Handbook ("Handbook") for "information about the educational requirements of particular occupations." *Id.* A second authoritative source is the DOL's O*Net Standard Occupational Classification ("O*Net Report"). Def.'s XMSJ, ECF No. 19-1 at 23. The O*Net Report is "the nation's primary source

for occupational information." *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 54 (D.D.C. 2019).

### B. Factual and Procedural Background

HBSI provides Information Technology ("IT") services such as hospital billing, cash posting, collecting, and business function services to over forty hospitals and medical centers across eleven states. *See* Def.'s Stmt. of Material Facts ("Def.'s SMF"), ECF No. 19-2 ¶ 1. All these hospitals and medical centers, including HBSI itself, are owned by Prime Healthcare Services ("Prime"). *Id.* To meet Prime's IT needs, HBSI employs Application Analysts, whose job duties include, among other things, maintaining system utilization files, assisting computer programmers in resolution of work problems, logging and maintaining records of system performance, developing new systems or procedures to improve production workflow, interacting with vendors, and reporting software problems. *Id.* ¶ 2; *see also e.g.,* AR, ECF No. 23-11 at 37-40.

On April 2, 2018, HBSI filed petitions with USCIS, seeking to secure each petition beneficiary's H-1B status beginning September 1, 2018. Def.'s SMF, ECF No. 19-2 ¶ 4. Each individual had recently received a Master of Computer Science degree from a U.S. University, *see, e.g.*, AR, ECF No. 23-1 at 108-117; and was offered the position of Applicant Analyst at a wage of $25.11 per hour. Def.'s SMF, ECF No. 19-2 ¶ 3, 4.

For each petition, HBSI provided: (1) an LCA, *see* AR, ECF No. 23-2 at 2-7; (2) a letter from Prime's President of Operations with background information on HBSI, the job duties of Application Analysts, and the suitability of each beneficiary for the position, *see id. at* 9-12; (3) copies of the beneficiaries' respective Master's degrees and official transcripts, *see, e.g.*, *id. at* 50-59; (4) a copy of their F-1 student visas and work authorizations, *see, e.g.*, *id. at* 35-48; and (5) a copy of the biographic page of their unexpired passports, *see, e.g.*, *id. at* 32-24.

In October 2018, USCIS issued a "Request For Evidence" ("RFE") seeking additional information regarding whether the Application Analyst position qualified as a specialty occupation, and for three of the petitions, additional evidence establishing the employer-employee relationship. *See* Def.'s SMF, ECF No. 19-2 ¶ 6. In the RFE, USCIS identified the deficiencies in the petitions and provided detailed guidance on the types of evidence that would be probative. *Id.* ¶ 7-12.

Six of the petitions were reviewed at USCIS's California Service Center and each was denied because HBSI had failed to demonstrate that the proffered position was a specialty occupation.[3] *See* AR, ECF No. 23-1 at 5-12 (WAC 0003) (denial of

---

[3] For three of the petitions, USCIS also determined that HBSI had failed to demonstrate that the beneficiary would "perform

petition for Suhasini Rajulapudi); AR, ECF No. 23-3 at 5-13 (WAC 1540)(denial of petition for Raghavendra Cheni); AR, ECF No. 23-5 at 177-185 (WAC 1719) (denial of petition for Reshma Vemula); AR, ECF No. 23-7 at 3-8 (WAC 1166) (denial of petition for Arpit Pandya) AR, ECF No. 23-9 at 5-13 (WAC 1947) (denial of petition for Shraddha Varvadekar); ECF No. 23-11 at 12-20 (WAC 0365)(denial of petition for Mihir Patel).[4] Two of the petitions were reviewed at the Vermont Service Center and approved. *See* AR, ECF No. 23-4 at 8-9 (approval of petition for Kaushik Yelisetti); AR, ECF No. 23-4 at 10-11 (approval of petition for Devika Meda).

HBSI subsequently filed its Complaint in this Court on January 28, 2019. *See* ECF No. 1. On October 7, 2019, HBSI moved for summary judgment, seeking an order from this Court directing USCIS to grant the six H1-B petitions. *See* Pl.'s MSJ, ECF No. 18-1. USCIS opposed and filed a cross motion for summary judgment on November 6, 2019. *See* Def.'s XMSJ, ECF No. 19-1. HBSI filed an opposition to the cross motion shortly thereafter. *See* Pl.'s Mem. Opp. Def.'s Cross Mot. for Summary Judgment

---

services in a specialty occupation at your location for the requested employment period." AR, ECF No. 23-3 at 8. Neither party sought summary judgment on this aspect of the decisions. *See generally* Pl.'s MSJ, ECF No. 18-1, Def.'s XMSJ, ECF No. 19.
[4] Each Administrative Record is largely similar, as is each USCIS Decision. Accordingly, the Court generally cites to the first AR in the record in this case and indicates where there are significant differences in USCIS's decisions.

("Pl.'s Opp'n"), ECF No. 21. USCIS replied on December 4, 2019. *See* Def.'s Reply, ECF No. 22. The cross motions are ripe and ready for the Court's adjudication.

### III. Standard of Review

Summary judgment is ordinarily warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 719 F. Supp. 2d 26, 31-32 (D.D.C. 2010) (alteration in original) (citing Fed. R. Civ. P. 56(c)), aff'd, 663 F.3d 476 (D.C. Cir. 2011)). However, this standard does not apply in cases, such as this one, involving review of agency action under the APA "because of the limited role of a court in reviewing the administrative record." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal quotation marks and citations omitted). In such cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Cottage*

*Health Sys. v. Sebelius*, 631 F. Supp. 2d 80, 90 (D.D.C. 2009)
(internal citations omitted).

Under the APA, the question for the court is limited to
whether the agency action was "arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law." 5
U.S.C. § 706(2)(A). Review of agency action is "highly
deferential." *AT & T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C.
Cir. 2018) (quoting *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536,
541 (D.C. Cir. 2009)). While the agency "'must examine' the
relevant factors and data and articulate a 'rational connection'
between the record and [its] decision," *id.* (quoting *Motor
Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.
Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983));
the "decision need not be a model of analytic precision to
survive a challenge," *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C.
Cir. 2012) (internal quotation marks and citations omitted). The
inquiry is "narrow," and the court "is not to substitute its
judgment for that of the agency." *State Farm*, 463 U.S. at 43.

Although the scope of review is deferential, "courts retain
a role ... in ensuring that agencies have engaged in reasoned
decision making." *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177
(D.D.C. 2018) (citing *Judulang v. Holder*, 565 U.S. 42, 53, 132
S. Ct. 476, 181 L. Ed. 2d 449 (2011)). The requirement that an
agency action not be arbitrary and capricious includes a

requirement that the agency adequately explain its result. *Id.* (citing *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)). Judicial review is "not toothless: a court will find an Agency acted arbitrarily or capriciously if it has relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation either contrary to the evidence before the agency or so implausible as to not reflect either a difference in view or agency expertise." *Taylor Made Software, Inc. v. Cuccinelli*, 453 F.Supp.3d 237, 242 (D.D.C. 2020) (citing *Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016)) (internal quotation marks omitted).

## IV.  Analysis

HBSI challenges USCIS's denials in two ways. First, HBSI contends that the Agency seeks to implement a new interpretation of 8 C.F.R. § 214.2(h)(4)(iii)(A), and that this interpretation does not warrant *Auer* deference.[5] *See* Pl.'s Opp'n, ECF No. 21, at 19. Second, HBSI argues that the Agency's denials were arbitrary and capricious with regard to all four of the 8 C.F.R. §

---

[5] HBSI also argues that USCIS's interpretation of "specialty occupation" in 8 C.F.R. § 214.2(h)(4)(ii) is not entitled to deference because it "parrots" the statutory language. Pl.'s Opp'n, ECF No. 21 at 18. However, and as USCIS points out, HBSI challenges USCIS's interpretation and application of 8 C.F.R. § 214.2(h)(4)(iii); not USCIS's interpretation of "specialty occupation." Accordingly, the Court need not address this argument.

214.2(h)(4)(iii)(A) criteria. *See id.* at 7. The Court addresses each of these arguments in turn.

### A. USCIS'S Interpretation of 8 C.F.R. § 214.2(h)(4)(iii)(A) Is Entitled to Deference

HBSI argues that USCIS's interpretation of its regulation at 8 CFR § 214.2(h)(4)(iii)(A) to require a bachelor's degree or higher in a specific specialty, rather than any bachelor's degree, violates the plain language of the regulation. *See* Pl.'s Opp'n, ECF No. 18-1 at 20. USCIS responds that its interpretation is permissible when the provision is read in concert with the statutory and regulatory definitions of "specialty occupation," noting that HBSI's argument was rejected in *Sagarwala v. Cissna*, 387 F. Supp. 3d 56 (D.D.C. 2019) (as well as a number of cases in other districts). *See* Def.'s XMSJ, ECF No. 19-1 at 15-16. USCIS also notes that HBSI fails to cite, much less distinguish, this persuasive authority. Def.'s Reply, ECF No. 22 at 6.

USCIS's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted). *Auer* deference is appropriate when: (1) "the regulation is genuinely ambiguous"; (2) "the character and context of the agency interpretation entitles it to controlling weight" based on, among other things, whether the regulatory interpretation is (a) the agency's

authoritative or official position and (b) implicates the
agency's substantive expertise; and (3) the "agency's reading of
a rule . . . reflects its 'fair and considered judgment'" *Kisor
v. Wilkie*, 139 S. Ct. 2400, 2415-17 (2019) (quoting *Auer*, 519
U.S. at 462); rather than a "convenient litigating position" or
a new interpretation that "creates unfair surprise" to regulated
parties, *id.* at 2417-18 (internal quotations and citations
omitted). In determining whether the statute unambiguously
expresses the intent of Congress, the Court should use all the
"traditional tools of statutory construction," including looking
to the text and structure of the statute, as well as its
legislative history, if appropriate. *Chevron U.S.A. Inc. v.
Natural Resources Defense Council, Inc.*, 467 U.S. 873, 843, n.9.
"If genuine ambiguity remains . . . the agency's reading must
fall within the bounds of reasonable interpretation." *Kisor,* 139
S. Ct. at 2415 (internal quotation marks and citations omitted).

USCIS does not dispute that the regulation is ambiguous.
*See generally* Def.'s XMSJ, ECF No. 19-1. HBSI, however, argues
that "the regulation is not 'genuinely ambiguous' [because] [i]t
creates 'precise' requirements for employers to satisfy the
second H-1B element." Pl.'s Opp'n, ECF No. 21 at 22. But the
evidence that the petitioner may provide to establish that the
position qualifies as a specialty position is beside the point.
The issue is whether 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) is

susceptible to more than one interpretation. The Court is persuaded that it is because taking into account the text and structure of the statute and regulations, it could be interpreted to require a baccalaureate degree or higher in a specific specialty or any baccalaureate or higher degree. *See Sagarwala*, 387 F. Supp. 3d at 68.

HBSI also claims that "the agency lacks the substantive expertise needed to make its own determination on the degree requirement," pointing to agency policies that direct agency adjudicators to consult with experts regarding the degree requirement when there is uncertainty. Pl.'s Opp'n, ECF No. 21 at 22-23. The Court disagrees. USCIS determines whether a position qualifies as a specialty occupation, *see* 20 C.F.R. § 655.715; and the employer bears the burden of convincing the Agency that the position qualifies and the applicant is otherwise eligible for a visa, *see* 8 U.S.C. § 1361. USCIS's relevant substantive expertise is a factor in the deference due to USCIS's determination of a specialty occupation. *See Kisor*, 139 S. Ct. at 2403 (observing that "the basis for deference ebbs when the subject matter of a dispute is distant from the agency's ordinary duties"). Making specialty occupation determinations for H-1B visas is not, therefore, "distant" from USCIS's "ordinary duties." *Id.*

The Court is persuaded that USCIS's interpretation of the regulation to require a bachelor's degree or higher or its equivalent in a specific specialty "fall[s] within the bounds of reasonable interpretation." *Kisor,* 139 S. Ct. at 2416. The regulation refers to "[a] baccalaureate degree or higher or its equivalent," 8 C.F.R. § 214.2(h)(4)(iii)(A)(1); without specifying that the degree needs to be in a specific specialty. However, the statutory context is admitting nonimmigrants to perform a specialty occupation, which is statutorily defined to include the "attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(B); *see also* 8 C.F.R. § 214(h)(4)(ii)) (defining specialty occupation to mean, among other things, "the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States"). USCIS's interpretation is neither "plainly erroneous or inconsistent with the regulation," *Mellow Partners*, 890 F.3d at 1079; when understood in the statutory and regulatory context.

Additionally, the Court is persuaded that "the character and context of the agency interpretation entitles it to controlling weight," *Kisor,* 139 S. Ct. at 2416; because USCIS's interpretation is an official agency position that implicates

its substantive expertise in interpreting its regulations, *see Sagarwala*, 387 F. Supp. 3d at 67. Furthermore, USCIS's interpretation is not a litigation position or a new interpretation, but it is the agency's "fair and considered judgment." *Kisor,* 139 S. Ct. at 2417.

### B. UCSIS' Training Materials Are Not Final Agency Action Subject to Judicial Review Under the APA

HBSI argues that USCIS enacted an "unlawful legislative rule," pointing to USCIS's training materials which it contends require its employees to "deny petitions for computer related positions unless a particular degree is necessary and always required of all United States workers doing the position." Pl.'s Mot., ECF No. 18-1 at 21. USCIS responds—and the Court agrees—that the training materials are not final agency action subject to judicial review.

"Agency actions are final if two independent conditions are met: (1) the action 'mark[s] the consummation of the agency's decisionmaking process' and is not 'of a merely tentative or interlocutory nature;' and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78, 17 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)) (internal quotation marks omitted). Neither of these conditions are met

with the training materials. Rather, the final agency action subject to judicial review under the APA is USCIS's determinations on each of the petitions.[6]

### C. Deference is Owed to the Decisions of the USCIS Service Centers[7]

HBSI argues that no deference is due to the decisions of USCIS's service centers because since they are "among the lowest level decision makers in the agency," their interpretation of regulations "cannot be construed as official or authoritative." Pl.'s Opp'n, ECF No. 21 at 27. The Court disagrees. "[D]eference is owed to the decisionmaker authorized to speak on behalf of the agency . . .." *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998). Accordingly, the six decisions issued by the service centers are not "ad hoc statement[s] not reflecting the agency's views," *Kisor*, 139 S. Ct. at 2416; but rather the outcome of "the decisionmaker authorized to speak on behalf of the agency." *Serono*, 158 F.3d at 1321.

---

[6] Because the training materials are not final agency action, the Court need not reach HBSI's argument that the training materials amount to a "legislative rule." Pl.'s MSJ, ECF No. 18-1 at 20.
[7] HBSI also asserts that USCIS cannot engage in "adjudicative rulemaking." Pl's Opp'n, ECF No. 21 at 26. However, and as USCIS points out, "[t]he final decisions that [HBSI challenges in this action are adjudications, not 'adjudicative rulemaking.'" Def.'s Reply, ECF no. 22 at 9 (citing *Conf. Grp. V. FCC*, 720 F.3d 957, 965 (D.C. Cir. 2013) (noting that adjudications are "highly fact-specific, case-by-case" determinations).

**D. Analysis of the 8 C.F.R. § 214.2(h)(4)(iii)(A) Factors**

HBSI is entitled to the relief sought if USCIS's denials of
the petitions were arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law. 5 U.S.C. §
706(2)(A). HBSI argues that USCIS's decisions were arbitrary and
capricious in concluding that the Application Analyst position
was not a specialty occupation. *See* Pl.'s MSJ, ECF No. 18-1 at
7.

A "specialty occupation" is "an occupation that requires
theoretical and practical application of a body of highly
specialized knowledge; and attainment of a bachelor's or higher
degree in the specific specialty (or its equivalent) as a
minimum for entry into the occupation in the United States." 8
U.S.C. § 1184(i)(1). To qualify as a specialty occupation, the
position must meet at least one of four criteria: (1) a
baccalaureate or higher degree is normally the minimum
requirement for entry into the particular position; (2) the
degree requirement is common to the industry in parallel
positions among similar organizations or the position is so
unique or complex that only an individual with a degree can
perform it; (3) the employer normally requires a degree or its
equivalent for the position; or (4) the nature of the specific
duties are so specialized and complex that the knowledge
required to perform the duties is usually associated with

attainment of a baccalaureate degree or higher. 8 C.F.R. §
214.2(h)(4)(iii)(A). USCIS considers these regulatory criteria
to be "supplemental criteria that must be met in accordance
with, and not as alternatives to, the statutory and regulatory
definitions of specialty occupation." AR, ECF No. 23-1 at 6.

USCIS first determined that the Application Analyst
position does not qualify as a specialty occupation because

> [t]he duties as described do not communicate:
> (1) the actual work that the beneficiary would
> perform; (2) the complexity, uniqueness and/or
> specialization of the duties; or (3) the
> correlation between that work and a need for
> a particular level of education of highly
> specialized knowledge in a specific specialty.
> Thus, you have not shown that the proffered
> position is a specialty occupation and the
> petition must be denied on this basis alone.

*Id.* at 8.

However, USCIS went on to analyze "the duties as described
and the evidence of record to determine whether the proffered
position as described would qualify as a specialty occupation"
based on whether HBSI had shown that the position meets at least
one of the four criteria set forth at 8 C.F.R. §
214.2(h)(4)(iii)(A). Since these four criteria "unambiguously
'create a necessary . . . condition' for the issuance of a H-1B
visa," *Sagarwala*, 387 F. Supp. 3d at 64; HBSI must show that
USCIS was wrong about at least one of the criteria.

The Court will discuss each of the four factors in turn, cognizant that its review is limited only to "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)). It is not enough that the Court "would have come to a different conclusion" than the Agency had it considered the matter de novo. *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 89 (D.D.C. 2019).

> **1. USCIS Abused Its Discretion in Determining That a "Baccalaureate or Higher Degree or Its Equivalent Is Not Normally the Minimum Requirement For Entry Into the Computer Systems Analyst Position"**

> **a. The Handbook Rationale**

USCIS determined that HBSI failed to demonstrate that the proffered position met the first criterion. Each decision relied on the Handbook to conclude that "a bachelor's level of training in a specific specialty is not required for the Computer Systems Analysts occupation. Many Computer Systems Analysts have liberal arts degrees and gained experience elsewhere." AR, ECF No.23-1 at 9.

The Handbook provides in relevant part:

> A bachelor's degree in a computer or
> information science field is common, although

> not always a requirement. Some firms hire
> analysts with business or liberal arts degrees
> who have skills in information technology or
> computer programming.
>
> Most computer systems analysts have a
> bachelor's degree in a computer-related field.
> Because these analysts also are heavily
> involved in the business side of a company, it
> may be helpful to take business courses or
> major in management information systems.
>
> Although many computer systems analysts have
> technical degrees, such a degree is not always
> a requirement. Many analysts have liberal arts
> degrees and have gained programming or
> technical expertise elsewhere.
>
> Some employers prefer applicants who have a
> master's degree in business administration
> (MBA) with a concentration in Information
> systems. For more technically complex jobs, a
> master's degree in computer science may be
> more appropriate.

AR, ECF No. 23-11 at 74.

Pointing to the dictionary meaning of the words "most" and "normally," Pl.'s MSJ, ECF No. 18-1 at 24; HBSI argues that USCIS's determination was arbitrary and capricious because there is no rational connection between the Handbook's description that "[m]ost computer systems analysts have a bachelor's degree in a computer-related field" and USCIS's determination that the petitions did not satisfy this criterion because a degree is not "normally" required. Pl.'s MSJ, ECF No. 18-1 at 26.

USCIS responds that the Handbook "does not explicitly state that a bachelor's degree in a computer-related field is

'normally' required." Def.'s XMSJ, ECF No. 19-1 at 21. While acknowledging that the Handbook asserts "that a bachelor's degree in a computer or information science field is 'common'—a term that can be synonymous with 'normal,'" USCIS points to the principle that "an agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view," *id.* (quoting *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005)). USCIS also points out that other parts of the Handbook suggest that a bachelor's degree in computer science is not "normally" required because it states that "many analysts have liberal arts degrees and have gained programming or technical experience elsewhere." *Id.* at 22 (quoting the AR).

Following the completion of summary judgment briefing, HBSI submitted a Notice of Supplemental authority, discussed immediately below, asserting that the underlying USCIS decisions and rationales are indistinguishable from the new persuasive authority. *See* Notice, ECF No. 24 at 2. USCIS did not respond to the Notice nor distinguish the new authority. *See generally* Docket for Civil Action No. 19-198.

In *Taylor Made Software, Inc. v. Cucccinelli*, 453 F. Supp. 3d 237 (D.D.C. 2020), USCIS had denied the plaintiff's petition to employ, as a computer systems analyst, a person with a Master of Science in Computer Science based on the same Handbook

rationale as here. 453 F. Supp. 3d at 241, 244. The District
Court rejected USCIS's reading of the Handbook as well as the
conclusion drawn from it, observing "[t]he Handbook's statement
that a bachelor's degree in computer or information science is
'common, although not always a requirement' seems to support,
rather than disprove, the proposition that '[a] baccalaureate or
higher degree [in a specific specialty] or its equivalent is
*normally* the minimum requirement for entry into the particular
position.'" *Id.* at 244 (citing 8 C.F.R. § 214(h)(4)(iii)(a)(1)
(emphasis added)); *see also Info Labs Inc. v. USCIS*, Civil
Action No. 19-684, 2020 WL 1536251, * 4 (D.D.C. Mar. 31, 2020)
("[T]he Handbook's statement that a bachelor's degree in
computer or information science is 'common, although not always
a requirement' supports, rather than disproves, the proposition
that a specialized degree or its equivalent is normally the
requirement."); *see also 3Q Digital, Inc. v. USCIS*, No. 19-cv-
579, 2020 WL 1079068, at *3 (D.D.C. 2020) ("[The regulation]
does not say that a degree must always be required, yet the
Agency appears to have substituted the word 'always' for the
word 'normally.' This is a misinterpretation and misapplication
of the law, and [one that] effectively hold[s] the Plaintiff to
a higher standard than that which is set by the regulation
...."); *Innova Solutions, Inc. v. Baran*, 983 F.3d 428, 432, (9th
Cir. 2020) (internal citations and quotation marks omitted)

([T]he fact that some [systems analysts] are hired without a bachelor's degree is entirely consistent with a bachelor's degree normally [being] the minimum requirement for entry."); *but see Altimetrik Corp. v. Cissna*, No. 18-10116, 2018 WL 6604258, at *6 (E.D. Mich. 2018) (internal citations and quotation marks omitted) (The Handbook "makes it clear that a degree in a computer-related field is not required" for computer system analysts because "[s]ome firms hire analysts with business or liberal arts degrees.").

The Court recognizes that there is some divergent authority, but finds *Taylor Made and Info Labs* to be more persuasive. As indicated *supra*, USCIS did not attempt to distinguish this authority.[8]  USCIS's determination that "a bachelor's level of training in a specific specialty is not required for the Computer Systems Analysts occupation [because] [m]any Computer Systems Analysis have liberal arts degrees and gained experience elsewhere," AR, ECF No. 23-1 at 9; failed to consider the relevant statements in the Handbook that "[a] bachelor's degree in a computer or information science field is

---

[8] The Court need not consider USCIS's arguments distinguishing *Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252, 267 (S.D.N.Y. 2017) on the ground that the occupations at issue here are computer systems analyst positions whereas computer programmer occupations were at issue in that case because there is persuasive authority addressing computer systems analyst positions.

common, although not always a requirement," and that "[m]ost
computer systems analysts have a bachelor's degree in a
computer-related field." AR, ECF No. 23-11 at 74. USCIS's
reliance on the statement that an undetermined number of persons
in the position "have liberal arts degrees and gained experience
elsewhere," AR, ECF No. 23-1 at 9; ignores these relevant
factors. USCIS's argument that the decision is a "plausible,
alternative interpretation" because the Handbook "does not
explicitly state that a bachelor's degree in a computer-related
field is 'normally' required," Def.'s XMSJ, ECF No. 19-1 at 21;
is unpersuasive because the language in the Handbook certainly
"implie[s] that a specialized bachelor's degree is the typical
baseline requirement." *Taylor Made*, 453 F. Supp. 3d at 245.

### b. The O*Net Report Rationale

Four of the decisions also relied on the O*NET Report to
conclude that the zone in which the position is classified
"signifies only that most but not all of the occupations within
it require a bachelor's degree." AR, ECF No. 23-3 at 8. The
O*Net states in relevant part that: (1) "considerable
preparation is needed" for positions in this zone; and (2)
"[m]ost of these occupations require a four-year bachelor's
degree, but some do not."
https://www.onetonline.org/link/summary/15-1211.00?redir=15-
1121.00 (accessed August 21, 2021). USCIS determined that "a Job

Zone 4 signifies only that most but not all of the occupations within it require a bachelor's degree," and that there is no evidence that it requires "particular majors or academic concentrations." AR, ECF No. 23-3 at 8; AR, ECF No. 23-5 at 180; AR, ECF No. 23-9 at 8; and AR, ECF No. 23-11 at 15.

HBSI argues that USCIS's "treatment of the O*Net fails to address the salient question: "where, besides a degree in computer science, would employees get this required knowledge?" Pl.'s MSJ, ECF No. 18-1 at 24. USCIS argues that although the O*Net classification "may signify that most of the occupations require a bachelor's degree," "this does not establish that a bachelor's degree or higher in a specific specialty is normally required for entry into the position." *Id.* at 23-24

The Court finds USCIS's determination regarding the O*Net Report to be reasonable. The Report provides no information about whether the four-year bachelor's degree required for "most" Job Zone Four occupations needs to be in a particular major or academic concentration.

However, all six petitions were also denied based on the handbook rationale. For the reasons discussed above, the decisions were not based "on a consideration of the relevant factors" and there was "a clear error of judgment." *ExxonMobil Gas Mktg. Co.,* 297 F.3d at 1083. Accordingly, USCIS was arbitrary, capricious, and abused its discretion in its

decisions regarding this criterion. The decisions will be remanded to USCIS to make a new determination for all six petitions consistent with this Memorandum Opinion.

### 2.a. USCIS Did Not Abuse Its Discretion In Determining That HBSI Failed to Demonstrate That "The Degree Requirement Is Common to the Industry In Parallel Positions Among Similar Organizations"

In the RFE, USCIS informed HBSI of the types of evidence that could be submitted to satisfy this criterion: (1) job postings or advertisements with supporting documentation; (2) letters from industry-related professional associations; and/or (3) letters or affidavits from firms or individuals in the industry with supporting documentation, all of which must speak to similar firms routinely employing and recruiting individuals with a bachelor's degree or higher in a specific specialty. AR, ECF No. 23-1 at 29.

In response to the RFE, HBSI provided copies of Applications for Permanent Employment Certification from the U.S. Department of Labor ("certification") from four employers. HBSI stated that: (1) "these organizations are large organizations similar in size to HBSI and the Prime Healthcare system"; (2) the positions for which certification was sought are "in line" with the petitions due to the education required and the nature of the job duties; and (3) the information in

each certification "established the degree requirement as common within the profession." AR, ECF No. 23-1 at 45.

The certification from Electrolux Home Products, Inc. was for a Computer Systems Analyst Position, Level IV; and indicated that the minimum education required was a bachelor's degree in electronic engineering or a related engineering field. AR, ECF No. 23-1 at 60-62. The certification from Arthrex, Inc. was for a Computer Systems Analyst position, Level IV, and indicated that the minimum education required was a bachelor's degree in computer science, engineering, information systems, or related field. AR, ECF No. 23-1 at 76-78. The certification from Paul, Weiss, Rifkind, Wharton & Garrison LLP was for a Computer Systems Analyst position, Level IV, and indicated that the minimal educational requirement was a bachelor's degree in computer science, mathematics, or a closely related field. AR, ECF No. 23-1 at 84-86. Finally, the certification from PetSmart, Inc. was for a Computer Systems Analyst, Level IV, and indicated that the minimum educational requirement was a bachelor's degree in engineering, computer science, mathematics, or related field. AR, ECF No. 23-1 at 92-94. Each of the certifications includes information about advertising for the positions in newspapers and job search websites, which HBSI incorporated by reference into its response. *Id*. at 45.

USCIS determined that the evidence submitted was insufficient to meet this criterion because: (1) the "certification[s] are not sufficient evidence of a degree requirement being common to the industry in parallel positions among similar organizations," AR, ECF No. 23-1 at 9; (2) the proffered employers are "dissimilar to your organization," AR, ECF No. 23-3 at 9; and/or (3) no documentation was submitted regarding industry-standard degree requirements, AR, ECF No. 23-7 at 6. Three of the Decisions noted that one of the certifications indicated that one of the employers would accept applicants with any engineering degree and stated that because engineering encompasses numerous fields, this would not be a specialty occupation. AR, ECF No. 23-3 at 9; AR, ECF No. 23-5 at 181; AR, ECF No. 23-11 at 16. Two Decisions stated that the certifications indicate that the field of study is not limited to computer science, which is the degree appropriate to the proffered positions. AR, ECF No. 23-9 at 9; AR ECF No. 23-11 at 16.

HBSI argues that USCIS has not provided any "regulations, guidance, or explanation of what constitutes a 'parallel position' in a 'similar organization'" and as a result there is no clear standard for agency decision-making. Pl.'s Opp'n, ECF No. 18-1 at 26-27. HBSI also argues that USCIS did not consider

HBSI's "in depth analysis of how each exemplar was a parallel position in a similar organization." *Id.* at 27.

USCIS responds that it "articulated a rational connection between the record and its decision," citing the explanations provided in the decisions. Def.'s XMSJ, ECF No. 19-1 at 29-30. USCIS also points out that in *Sagarwala*, the plaintiff provided letters of support from other companies in addition to job posting, but the court nonetheless found that "it was not unreasonable for UCSIS to conclude that a bachelor's degree was common across the industry in parallel positions, but that one in a specific specialty was not. *Sagarwala*, 387 F. Supp. 3d at 67-68.

As an initial matter, USCIS's position in some of the decisions that a specific degree is required for a position to be considered a "specialty position" is unsound. As the Court has stated before, "[t]here is no requirement in the statute that only one type of degree be accepted for a position to be specialized." *RELX*, 397 F. Supp. 3d at 54-55. The statute and regulations simply require that "the position requires the beneficiary to apply practical and theoretical specialized knowledge and [have] a higher education degree." *Id.; see also Residential Fin. Corp. v. USCIS*, 839 F. Supp. 2d 985, 997 (S.D. Ohio 2012) ("Diplomas rarely come bearing occupation-specific majors."); *Tapis Int'l v. I.N.S.*, 94 F. Supp. 2d 172, 175-76 (D.

Mass. 2000) (rejecting a similar USCIS interpretation because it would preclude any position from satisfying the "specialty occupation" requirements where a specific degree is not available in that field).

However, because USCIS has offered "multiple independent grounds" for its determination that HBSI did not satisfy this criterion, *Fogo De Chao (Holdings) v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) (internal citation omitted); the Court concludes that USCIS did not abuse its discretion in its determination that HBSI failed to demonstrate that a degree requirement is common to the industry in parallel positions[9] among similar organizations. Contrary to HBSI's complaint about the lack of guidance, the RFE provided HBSI with detailed guidance on the types of evidence that would satisfy this criterion, making clear that the focus is on the employer's industry. HBSI contends that the employers for which it provided the certifications are similar because they "are large organizations similar in size to HBSI and the Prime Healthcare system." AR, ECF No. 23-1 at 45. However, HBSI failed to provide any evidence related to the requirements for Computer Systems Analysts in the industry that provides IT services to the

---

[9] There does not appear to be a dispute as to whether the evidence demonstrated that the positions were parallel as each was for a Computer Systems Analyst, Level IV position.

healthcare industry. Accordingly, it was not arbitrary, capricious, or an abuse of discretion for USCIS to determine that HBSI failed to meet its burden on this criterion.

### 2.b USCIS Did Not Abuse Its Discretion In Determining That HBSI Failed to "Demonstrate That the Particular Position Is So Complex or Unique That It Can Be Performed Only By An Individual With a Degree"

In the RFE, USCIS informed HBSI of the types of evidence that could be submitted to satisfy the criterion: (1) letters from an industry-related professional association supporting that the position is so complex or unique that it requires an individual with a degree; (2) copies of letters or affidavits from firms or individuals attesting to the same with an explanation of the writer's qualifications as an expert, knowledge the of petitioner's business, how the conclusions were reached, and the basis for the conclusions; and/or (3) copies of trade publications or industry articles demonstrating the necessity for the degree. *See* AR, ECF No. 23-1 at 30.

In response to the RFE, HBSI provided: (1) a detailed description of the job duties, *see* AR, ECF No. 23-1 at 46-48; (2) a narrative explanation of how the performance of the duties by an individual with a degree enables HBSI to carry out its mission, *id.* at 49; and (3) a letter from HBSI's President of Operations containing largely duplicative descriptions of the job duties and stating that the minimum requirements for the

position are a bachelor's degree or foreign equivalent in computer science or other closely related degree in the field, *id.* at 100-104.

USCIS determined that HBSI did not satisfy this criterion on the following grounds: (1) "[t]he submitted list of duties "was generic in nature and provides no further detail as to the unique or complex nature of the proffered position," AR, ECF No. 23-1 at 10; and (2) the LCA HBSI certified to DOL was for a "Wage Level 1" (entry level) position, which requires the holder to have "only a basic understanding of the occupation . . . perform routine tasks that require limited, if any, exercise of judgment," *id.* (quoting DOL Guidelines).

The Court concludes that USCIS did not abuse its discretion in its determination that HBSI failed to demonstrate that the position can only be performed by a person with a degree due to its complexity and uniqueness. First, the evidence HBSI provided in response to the RFE, while describing the duties, did not explain why they were so complex and unique that a bachelor's degree or higher in a computer related field was necessary. Second, the descriptions did not establish what aspect of the duties required at least a bachelor's degree, beyond the unsubstantiated assertion by the President of Operations.

HBSI argues that denying the petitions on the grounds that the positions are entry level "violates the plain language of

the regulation" because the regulation acknowledges that an entry-level position can qualify as a specialty occupation, pointing to a USCIS AAO Decision for the proposition that an entry-level position can be a specialty occupation. Pl.'s MSJ, ECF No. 18-1 at 28. USCIS responds—and the Court agrees—that HBSI's characterization of the denials is inaccurate: "the Agency did not state that a Level One Wage precluded classification as a specialty occupation," but rather that "the proffered wage level did not support HBSI's assertion that the proffered position involves duties seen as unique or complex." Def.'s XMSJ, ECF No. 19-1 at 34.

    HBSI also asserts that USCIS's reliance on the LCA is not entitled to deference because the LCA is a Department of Labor rather than a USCIS document and that the boilerplate language in the decision is "devoid of any details that would indicate it read or analyzed [HBSI's] submission," indicating that USCIS's adjudicators lack the competence to determine how complex the position is. Pl.'s MSJ, ECF No 18-1 at 29-30. USCIS responds—and the Court agrees—that that HBSI has not cited to any legal authority that would require USCIS to defer to an employer's determination that a position is a specialty occupation. *Id*. at 34-35.

    Based on HBSI's failure to explain why the duties were so complex and unique that a bachelor's degree or higher in a

computer related field was necessary nor what part of the duties required at least a bachelor's degree, beyond the unsubstantiated assertion by the President of Operations, it was not arbitrary, capricious, or an abuse of discretion for USCIS to determine that HBSI failed to meet its burden on this criterion.

> **3. With One Exception, USCIS Did Not Abuse Its Discretion In Determining That HBSI Failed to "Demonstrate That It Normally Requires a Degree or Its Equivalent In a Specific Specialty For the Position"**

In the RFE, USCIS informed HBSI of the types of evidence that could be submitted to satisfy this criterion: (1) an organizational chart containing educational and experience requirements for the position; (2) copies of present and past job announcements showing the educational requirements; (3) documentary evidence of past employment practices for the position, including (a) a list of the number of employees hired in the past two years for the position; (b) copies of employment or pay records for past and present employees in this position; (c) copies of degrees and/or transcripts to verify the education and field of study for each individual hired for the past two years as well as evidence to establish the duties performed; and (4) documentation listing the educational, experience, training and skills requirements of the offered position such as official

position descriptions, job offer letters, or job postings. AR,
ECF No. 23-1 at 31-32.

In response to the RFE, HBSI provided three types of
evidence. The first was an undated spreadsheet listing: (1) 11
"active" Application Analysts, each of whom had either a
bachelor or master's degree in degree in information science,
information technology, computer engineering, or computer
science; (2) three Application Analysts not listed as "Active"
for whom educational information was not provided; (3) one
Application Analyst not listed as "Active" with a master's
degree in applied statistics; and (4) eight Application Analysts
who were the beneficiaries of the April 2018 petitions. AR, ECF
No. 23-1 at 106. The second was copies of educational records
for: (1) the analyst with the degree in applied statistics; and
(2) seven of the eight petition beneficiaries. *Id.* at 107-17.
The third was a letter from HBSI's Human Resources ("HR")
Manager stating that HBSI "has a standard practice of hiring
individuals with a Bachelor's degree or higher in Computer
Science or closely related fields." *Id.* at 119. The letter
listed 18 Application Analysts, 14 of whom are designated as
"Active." *Id.* Eleven of these Application Analysts are also
listed on the spreadsheet. *Compare id.*, *with* AR, ECF No. 23-1 at
106.

USCIS determined that the evidence provided

> "do[es] not show that you 'normally' require a bachelor's
> degree or higher or its equivalent in a specific specialty
> because the documents do not show your requirements upon
> hiring workers. You did not provide probative evidence such
> as internal job descriptions or job postings to show that you
> "normally" require a bachelor's degree or higher or its
> equivalent in a specific specialty for the proffered
> position."

*Id.* at 11.

HBSI argues that "the evidence shows that [it] *always*
requires a degree in computer science for its computer systems
analysts." Pl's MSJ, ECF No. 18-1 at 30. USCIS responds that the
Agency "acted well within its discretion in finding that HBSI
failed to carry its evidentiary burden on [this] criterion
because: (1) the fact that the beneficiaries of HBSI's eight
2018 petitions have master's degrees in computer science "does
not constitute evidence" to satisfy this criterion, Def.'s XMSJ,
ECF No. 19-1 at 35; (2) the "unsupported and conclusory
statement from the HR manager . . . has little, if any probative
value," *id.* at 36; (3) even though USCIS "effectively conceded
that most of the employees whose educational information the
company provided appeared to have bachelor's degrees or higher
in computer science, computer information systems, information
technology, or closely related degrees in the field," this does
not satisfy the requirement because HBSI's failure to "provide
probative evidence, such as internal job descriptions, or job
postings," meant that it did not "show that [HBSI] 'normally'

require[s] a bachelor's degree or higher or its equivalent in a specific specialty for the proffered position," *id*. at 37 (citing AR); and (4) assuming that the Application Analyst position does have a degree requirement, HBSI did not demonstrate that a degree was in fact required for the position, *id*. at 37.

Except for one decision, the Court is satisfied that USCIS did not abuse its discretion when it determined that HBSI failed to demonstrate that it normally requires a degree or its equivalent in a specific specialty for the position. HBSI's argument that "the evidence shows that [it] *always* requires a degree in computer science for its computer systems analysts," Pl's MSJ, ECF No. 18-1 at 30; is unpersuasive. First, the evidence that all eight of the petition beneficiaries have master's degrees in computer science is not probative because it does not demonstrate a past practice. *See Innova Solutions, Inc. v. Baran*, 338 F. Supp. 3d 1009, 1024 (N.D. Ca. 2018) (finding that "USCIS articulated a rational and ample basis for its decision" when the employer failed to demonstrate that it had, in the past, required relevant employees to have certain degrees); *Palace Wine & Spirits, Inc. v. USCIS*, Civ. A. No. 11-0402, 2012 WL 19-1331, at  3 (D. Minn. May 25, 2012) (finding no abuse of discretion when USICS determined that this criterion had not been met based on the employer's prior hiring history

for the position). HBSI does not attempt to distinguish the persuasive authority relied on by USCIS. *See* Pl.'s Opp'n, ECF No. 21 at 15-16. Second, all the spreadsheet demonstrates is that each of the 11 "Active" Applications Analysts on the list have a bachelor's degree or higher in computer science, computer information systems, information technology, or closely related degrees in the field. The spreadsheet is undated and there is no information about the hiring date of any of the Active analysts. *See* AR, ECF No. 23-1 at 106. Third, other than the spreadsheet and one of the educational records, HBSI did not submit any evidence regarding its past practices to corroborate the information in the HR Manager's letter. HBSI was provided with detailed guidance about the types of evidence that would enable it to satisfy this criterion, but it failed to do so. Accordingly, it was not arbitrary, capricious, or an abuse of discretion for USCIS to determine that HBIS failed to meet its burden on this criterion.

The Court finds, however, that USCIS did abuse its discretion with regard to the decision on the petition on behalf of Mr. Pandya. USCIS provided the following rationale for HBSI's failure to satisfy this criterion:

> You provided documentation of your Computer-related employees and evidence of their degree educational backgrounds. However, the evidence that you submitted are for the

> employees in a different positions [sic] all
> together.

AR, ECF No. 23-7 at 7. However, the evidence submitted for Mr.
Pandya is the same as that submitted for the other beneficiaries
–specifically for Application Analysts. *See* AR, ECF No. 23-7 at
93. Accordingly, the determination for Mr. Pandya will be
remanded to USCIS to make a new determination consistent with
this Memorandum Opinion.

### 4. USCIS Did Not Abuse Its Discretion In Determining That HBSI Failed to Demonstrate That "The Nature of the Specific Duties Are So Specialized And Complex That Knowledge Required to Perform the Duties is Usually Associated With the Attainment of a Baccalaureate or Higher Degree"

In the RFE, USCIS informed HBSI of the types of evidence
that could be submitted to satisfy this criterion. Two
categories of evidence are identical to the evidence listed for
§ 214.2(h)(4)(iii)(A), and in addition, HBSI was informed that
it could explain, among other things, how the nature of the
duties "are so specialized and complex, that they are usually
associated with the attainment of a bachelor's degree or higher
in a specific field of study." AR, ECF No. 23-1 at 32. In
response, HBSI provided a narrative in which it asserted that
"the specific duties are indeed specialized and complex [such]
that the knowledge required to perform [them] is usually

associated with the attainment of a baccalaureate or higher
degree." AR, ECF No. 23-1 at 50.

USCIS determined that HBSI had not met its burden because
it failed to demonstrate that: (1) "the relative specialization
. . . as an aspect of the position"; (2) "how the duties of the
proffered position elevate [it] to a specialty position"; (3)
the "duties were described in generalized and abstract terms"
insufficient to show that they "are so specialized and complex
that that the knowledge required to perform [them] is usually
associated with the attainment of a bachelor's degree or its
equivalent in a specific specialty"; (4) "[i]t appears that the
beneficiary will perform the normal duties of a computer systems
analyst without any additional specialization or complexity that
is usually associated with the attainment of a bachelor's degree
or higher"; and (5) the designation of the position at Wage
Level 1  is the lowest level as compared with other positions in
the occupation. AR, ECF No. 23-1 at 12.

Similar to the Court's analysis of the second prong of §
214.2(h)(4)(iii)(A), here, USCIS's analysis of the evidence
submitted was reasonable. HBSI asserted that the job duties were
so complex and specialized that they are usually associated with
a degree but failed to explain why. HBSI's only argument is to
point to its analysis of the second criterion, which the Court
has already rejected. Accordingly, it was not arbitrary,

capricious, or an abuse of discretion for USCIS to determine
that HBSI failed to meet its burden on this criterion.

**V.    Conclusion**

For the foregoing reasons, HBSI's motion for summary judgment
is **GRANTED IN PART AND DENIED IN PART** and USCIS's cross motion
for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The
Court **REMANDS** this matter to USCIS for further proceedings
consistent with this Memorandum Opinion. An appropriate Order
accompanies this Memorandum Opinion.

**SO ORDERED.**

> **Signed:    Emmet G. Sullivan**
> **United States District Judge**
> **September 20, 2021**